FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2017 AUG -9 PM 2: 53

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

JANE HANSEN,

   Plaintiff,

-VS-

WELLS FARGO BANK, N.A. d/b/a WELLS
FARGO HOME MORTGAGE,

   Defendant.

_____/

CASE NO.:

6:17-cv-1469-ORL-31-KRS

## COMPLAINT

COMES NOW Plaintiff, Jane Hansen, by and through the undersigned counsel, and sues Defendant, Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage (hereinafter "Wells Fargo"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like Wells Fargo from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Brevard County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Brevard County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, Wells Fargo, with its principal place of business located at 420 Montgomery St., San Francisco, CA 94163 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays St., Tallahassee, FL 32301-2525.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. WELLS FARGO HOME MORTGAGE is a "creditor" as defined in Florida Statute §559.55(5).

16. WELLS FARGO HOME MORTGAGE called Plaintiff on Plaintiff's cellular telephone approximately one hundred (100) times in an attempt to collect a debt.

17. WELLS FARGO HOME MORTGAGE attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

18. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received from Wells Fargo.

19. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (321) ***-2239, and was the called party and recipient of Defendant's calls.

20. Plaintiff has previously sued Wells Fargo for this exact same conduct in the past, however Wells Fargo has resumed its harassment of Plaintiff after her first lawsuit came to resolution.

21. Plaintiff filed a lawsuit in the Middle District of Florida, Orlando Division, on September 21, 2015, Case Number 6:15-cv-01563-JA-DAB ("previous lawsuit"), alleging that Wells Fargo repeatedly called her cellular telephone after she had informed them multiple times to stop contacting her.

22. The previous lawsuit settled and a Joint Stipulation of Dismissal was filed on April 20, 2016.

23. Just over a year later, on approximately May 1, 2017, Wells Fargo began again placing automated calls to Plaintiff's cellular telephone in an attempt to collect on a debt.

24. Wells Fargo did not have Plaintiff's express permission to call her cellular telephone as she had previously revoked such permission on multiple occasions prior to the previous lawsuit.

25. On the first or second call Plaintiff received in early May, 2017, Plaintiff answered the call from Wells Fargo and informed the agent she wished for the calls to stop.

26. Despite clearly revoking any express consent Wells Fargo might have believed it had in May, the calls from Wells Fargo continued.

27. On or about June 27, 2017 at 5:18pm, Plaintiff answered another call from Wells Fargo and spoke to an agent known only as "Mike." Mike informed Plaintiff the call was being recorded, he was attempting to collect a debt, and wanted to know if Plaintiff was going to pay Wells Fargo. Plaintiff responded she would pay Wells Fargo as soon as she had the money, but to please not call her anymore. Plaintiff stated the calls were stressing her out. Mike informed Plaintiff he would stop the robo calls.

28. Despite clearly revoking any perceived express consent Wells Fargo might have believed it had on June 27, 2017, the calls from Wells Fargo continued.

29. Due to the volume of calls received, Plaintiff was not able to document each and every call received, however below is a small sampling of the automated calls Plaintiff received:

    i)     May 27, 2017 from 800-944-4601

    ii)     June 5, 2017 at 6:58pm from 800-678-7986

    iii)     June 6, 2017 at 7:28pm from 800-678-7986

    iv)     June 7, 2017 at 10:50am from 800-678-7986

    v)     June 8, 2017 at 9:55am from 800-678-7986

    vi)     June 9, 2017 at 5:59pm from 800-678-7986

    vii)     June 12, 2017 at 2:42pm from 800-678-7986

    viii)     June 13, 2017 at 4:30pm from 800-678-7986

    ix)     June 14, 2017 at 11:17am from 800-678-7986

    x)     June 14, 2017 at 3:57pm from 800-678-7986

    xi)     June 15, 2017 at 1:45pm from 800-678-7986

    xii)     June 19, 2017 at 1:16pm from 800-678-7986

30. Wells Fargo has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

31. Wells Fargo has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Wells Fargo, to remove the number.

32. Wells Fargo's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Wells Fargo they wish for the calls to stop.

33. Wells Fargo has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

34. Wells Fargo has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

35. Wells Fargo has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

36. Wells Fargo's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

37. Wells Fargo has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

38. Not a single call placed by Wells Fargo to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

39. Wells Fargo willfully and/or knowingly violated the TCPA with respect to Plaintiff.

40. From each and every call placed without consent by Wells Fargo to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

41. From each and every call without express consent placed by Wells Fargo to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Wells Fargo's calls.

42. From each and every call placed without express consent by Wells Fargo to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

43. Each and every call placed without express consent by Wells Fargo to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44. Each and every call placed without express consent by Wells Fargo to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

45. Each and every call placed without express consent by Wells Fargo to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

46. Each and every call placed without express consent by Wells Fargo to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

47. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, distress and aggravation.

## COUNT I
### (Violation of the TCPA)

48. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-seven (47) as if fully set forth herein.

49. Wells Fargo willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Wells Fargo that she wished for the calls to stop.

50. Wells Fargo repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Wells Fargo for statutory damages, punitive damages, actual

damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

51. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-seven (47) as if fully set forth herein

52. At all times relevant to this action Wells Fargo is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

53. Wells Fargo has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

54. Wells Fargo has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

55. Wells Fargo's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Wells Fargo for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Octavio "Tav" Gomez
_____
Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
TGomez@ForThePeople.com
Florida Bar #: 0338620
Attorney for Plaintiff